```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                  HOUSTON DIVISION
```

YUSUPH SEKIL,                    §
d/b/a HipHop Fashions,           §
                                 §
         Plaintiff,               §
                                 §
v.                               §   CIVIL ACTION NO. H-08-0510
                                 §
ADT SECURITY SERVICES, INC.,     §
                                 §
         Defendant.               §

### MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant ADT Security Services, Inc.'s ("ADT") Motion for Judgment on the Pleadings (Docket Entry No. 15). In support of the motion ADT has filed Defendant ADT Security Services, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings (Docket Entry No. 16). In opposition, plaintiff Yusuph Sekil has filed Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings (Docket Entry No. 26) and Plaintiff's Memorandum in Support of Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings (Docket Entry No. 27). Also pending before the court is Sekil's Motion for Leave to File First Amended Complaint (Docket Entry No. 24). In conjunction with this motion, Sekil has filed Plaintiff's First Amended Complaint (Docket Entry No. 25). For the reasons stated below, Sekil's Motion for Leave to File First Amended Complaint

will be granted, and ADT's Motion for Judgment on the Pleadings will be denied.

## I. Background

Sekil operates a business under the name of "HipHop Fashions" in Houston, Texas.[1] In January of 2007 Sekil entered into a contract with ADT to install an alarm security system and to provide monitoring and other services for the security system.[2] According to Sekil, the system was set up to utilize Sekil's cell phone as the primary phone line to support the alarm system.[3]

On April 24, 2007, Sekil's business was burglarized.[4] The alarm system failed to notify ADT or the police that intruders had

---

[1]Defendant ADT Security Services, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings, Docket Entry No. 16 at 1; Plaintiff's Memorandum in Support of Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings, Docket Entry No. 27 at 1.

[2]Defendant ADT Security Services, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings, Docket Entry No. 16 at 1; Plaintiff's Memorandum in Support of Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings, Docket Entry No. 27 at 1.

[3]Plaintiff's First Amended Complaint, Docket Entry No. 25 at ¶¶ 6, 8.

[4]Defendant ADT Security Services, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings, Docket Entry No. 16 at 2; Plaintiff's First Amended Complaint, Docket Entry No. 25 at ¶ 9.

entered the building.[5]  Sekil alleges that the burglars took $131,180.00 in cash, money orders, and merchandise.[6]

Sekil filed suit against ADT in the district court of Harris County, Texas, on December 7, 2007, alleging several causes of action under the Texas Deceptive Trade Practices Act ("DTPA").[7] ADT filed its answer in state court on February 4, 2008.[8]  On February 13, 2008, ADT removed the action to this court.[9]

On August 19, 2008, ADT moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[10]  On the same day, ADT moved the court to suspend discovery and all deadlines in this case pending the court's resolution of ADT's motion for

---

[5] Defendant ADT Security Services, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings, Docket Entry No. 16 at 2; Plaintiff's First Amended Complaint, Docket Entry No. 25 at ¶ 10.

[6] Plaintiff's First Amended Complaint, Docket Entry No. 25 at ¶¶ 9, 18, 25.a.

[7] See Plaintiff's Original Petition and Request for Disclosures (included in Defendant ADT Security Services, Inc.'s Notice of Removal, Docket Entry No. 1 at Exhibit C).

[8] See ADT Security Services, Inc.'s Original Answer to Plaintiff's Original Petition (included in Defendant ADT Security Services, Inc.'s Supplement to Notice of Removal, Docket Entry No. 6 at Exhibit G).

[9] See Defendant ADT Security Services, Inc.'s Notice of Removal, Docket Entry No. 1.  The court has jurisdiction based on diversity of citizenship of the parties.  See 28 U.S.C. § 1332(a)(1).

[10] See Defendant ADT Security Services, Inc.'s Motion for Judgment on the Pleadings, Docket Entry No. 15; Defendant ADT Security Services, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings, Docket Entry No. 16.


judgment on the pleadings.[11] Sekil responded by filing a motion for leave to file an amended complaint[12] along with a proposed First Amended Complaint,[13] and by filing briefs in opposition to ADT's motion for judgment on the pleadings[14] and ADT's motion to stay proceedings.[15] The court granted ADT's motion to stay proceedings on October 21, 2008,[16] and will now rule on the pending motions.

---

[11] See ADT's Motion to Stay Proceedings Pending the Resolution of ADT's Motion for Judgment on the Pleadings or, in the Alternative, For Summary Judgment, Docket Entry No. 17.

[12] See Motion for Leave to File First Amended Complaint, Docket Entry No. 24.

[13] See Plaintiff's First Amended Complaint, Docket Entry No. 25.

[14] See Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings, Docket Entry No. 26; Plaintiff's Memorandum in Support of Plaintiff's Response to Defendant's Motion for Judment on the Pleadings, Docket Entry No. 27.

[15] See Plaintiff's Response to Defendant ADT Security Services, Inc.['s] Motion to Stay Proceedings, Docket Entry No. 20; Plaintiff's Memorandum in Support of Response to Defendant ADT Security Services, Inc.['s] Motion to Stay Proceedings, Docket Entry No. 21.

[16] See Order, Docket Entry No. 32.

## II. Sekil's Motion for Leave to File Amended Complaint[17]

**A. Standard of Review**

When, as in this case, a party moves for leave to amend his pleadings after the date specified for such amendments in a scheduling order,[18] Rule 16(b) governs. S&W Enter., L.L.C. v. Southtrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003). Therefore, the movant must first demonstrate "good cause" to modify the scheduling order before the court will consider his motion to amend his pleadings. S&W Enter., 315 F.3d at 536; see also Fed. R. Civ. P. 16(b)(4)("A schedule may be modified only for good cause with the judge's consent."). The movant must demonstrate that he cannot reasonably meet the scheduling order's deadline, despite his

---

[17] The court will first consider Sekil's Motion for Leave to File First Amended Complaint because if the court grants the motion, the court can avoid unnecessarily evaluating whether Sekil's Original Petition stated a valid claim. Cf. Ulen Contracting Corp. v. Tri-County Elec. Coop., 1 F.R.D. 284, 285 (W.D. Mich. 1940) ("Subsequent to the motion by defendant for judgment upon the pleadings under Rule 12(c) . . . an amended complaint was filed by leave of the court. The motion must be disposed of upon the amended pleadings.") (citing Grubbs v. Smith, 86 F.2d 275 (6th Cir. 1936); Caterpillar Tractor Co. v. Int'l Harvester Co., 106 F.2d 769 (9th Cir. 1939)); Cook v. GTE Sw. Inc., No. 3:04-CV-2053-L, 2005 WL 292416 (N.D. Tex. 2005) (granting plaintiff's motion for leave to file amended complaint, then evaluating defendants' Rule 12(b)(6) motions, which were filed before plaintiff's motion for leave to amend, by analyzing the claims in plaintiff's amended complaint).

[18] The court's scheduling order for this case required that the parties submit motions to amend the pleadings by July 11, 2008. Docket Control Order, Docket Entry No. 12. Sekil filed his Motion for Leave to File First Amended Complaint on August 26, 2008. Motion for Leave to File First Amended Complaint, Docket Entry No. 24.

5

diligence. S&W Enter., 315 F.3d at 535. The court should consider four factors when determining whether to exercise its discretion to deviate from the scheduling order: (1) the moving party's explanation for its failure to timely move to amend, (2) the importance of the amendment, (3) potential prejudice to the other party in allowing the amendment, and (4) the availability of a continuance to cure any prejudice. Id. at 536.

If the moving party is able to make a showing of good cause, Rule 15(a)'s liberal standard for allowing pleading amendments will govern. Under this standard, leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the court has discretion to deny a motion for leave to amend, the court's discretion is limited because Rule 15(a) "'evinces a bias in favor of granting leave to amend.'" Stripling v. Jordan Production Co., LLC, 234 F.3d 863, 872 (5th Cir. 2000) (quoting Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999)). Unless it is apparent that the moving party has unduly delayed seeking the amendment, the amendment is proffered in bad faith, the moving part has repeatedly tried and failed to cure deficiencies in his pleading, allowing the amendment will result in undue prejudice to the non-moving party, or allowing the amendment would be futile, leave to amend should be granted. Foman v. Davis, 83 S. Ct. 227, 230 (1962).

**B. Rule 16(b) Inquiry**

Sekil alleges that he submitted his proposed First Amended Complaint after the scheduling order deadline because he only recently learned of some of the facts alleged therein.[19] Specifically, he contends that he was only recently able to speak with former ADT employee Derrick Pohts,[20] who was the representative sent by ADT to investigate the alarm system's failure after the burglary.[21] Sekil alleges that he has repeatedly attempted to take Pohts' deposition, but has been unable to obtain cooperation from ADT's counsel.[22] Sekil's reason for his failure to timely seek to amend his pleadings is sufficient. Cf. STMicroelectronics, Inc. v. Motorola, Inc., 307 F. Supp. 2d 845, 851 (E.D. Tex. 2004) ("[T]he good cause showing unambiguously centers on [the movant's] diligence . . . .").

The importance of the amendment in this case also favors a finding of good cause. Sekil's Original Petition was filed in

---

[19] Motion for Leave to File First Amended Complaint, Docket Entry No. 24 at ¶ 2.

[20] Id. at ¶ 3-4.

[21] Plaintiff's First Amended Complaint, Docket Entry No. 25 at ¶ 10.

[22] Motion for Leave to File First Amended Complaint, Docket Entry No. 24 at ¶ 4. See also Plaintiff's Memorandum in Support of Response to Defendant ADT Security Services, Inc.'s Motion to Stay Proceedings, Docket Entry No. 21 at ¶ 2 ("Since June 18, 2008, Plaintiff has been attempting to set depositions of Derrick Pohts . . . . For more than one month no response could be obtained from ADT's attorneys. ADT's attorneys further cancelled proposed dates for depositions, even on dates proposed by them.").

Texas state court, where there is no analogous procedural device to the Federal Rules' 12(c) or 12(b)(6) motions.  See 58 Tex. Jur. 3d Pleading § 288, at 728 (2006) ("Although the Federal Rules of Civil Procedure provide for a motion to dismiss for failure to state a claim upon which relief can be granted, the Texas Rules of Civil Procedure do not contain any analogous provision.").  Therefore, although the court does not decide the issue, Sekil's Original Petition may not have alleged sufficient facts to survive under federal pleading standards.  Cf. Bell Atl. Co. v. Twombly, 127 S. Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

    The court also concludes that ADT will not be unfairly prejudiced if Sekil is allowed to amend his complaint.  Since ADT did not respond to Sekil's Motion for Leave to File First Amended Complaint, the court may assume it is unopposed to the motion.  See S.D. Tex. R. 7.4 ("Failure to respond will be taken as a representation of no opposition.").  Moreover, the primary difference between the Original Petition and the First Amended Complaint is that the amended complaint alleges additional facts to support the causes of action asserted in the Original Petition. Sekil's proposed First Amended Complaint includes only one new DTPA violation not alleged in his Original Petition – that defendant's course of conduct was unconscionable.[23]  It is unlikely that this

---

[23] See First Amended Complaint, Docket Entry No. 25 at ¶ 16.

8

single additional alleged violation will require significantly more discovery that would be required for the other alleged violations because it arises out of the same core of operative facts.

All four factors suggest that Sekil has demonstrated good cause to amend his complaint after the scheduling order deadline. Moreover, it is notable that ADT waited over six months after removing this case to federal court to file its motion for judgment on the pleadings. ADT did not file the motion until August 19, 2008, <u>after</u> the scheduling order's July 11, 2008, deadline for amending pleadings had expired.[24] Parties often respond to motions for judgment on the pleadings, as Sekil has done, by amending their pleadings to "amplify a previously alleged claim . . . ."  6 Charles Alan Wright, Arthur R. Miller, & Mark Kay Kane, <u>Federal Practice & Procedure</u> § 1474 at 533 (2d ed. 1990). Such amendments are routinely granted under Rule 15(a), almost as a matter of course. See <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiff's at least one opportunity to cure pleading deficiencies before dismissing a case, unless . . . the defects are incurable or the plaintiffs . . . are unwilling or unable to amend in a manner that will avoid dismissal."); <u>E*Trade Fin. Corp. v. Deutsche Bank AG</u>, 420 F. Supp. 2d 273, 283 (S.D.N.Y. 2006) (explaining that when a "motion for leave to amend is filed in

---

[24]<u>See</u> Docket Control Order, Docket Entry No. 12.

9

response to a dispositive motion under Rule 12(b) or 12(c) based solely on the pleadings, the motion for leave to amend will be granted, unless the amendment would be 'futile.'"). Because of ADT's delay in filing its motion for judgment on the pleadings, Sekil had no reason to amend his pleadings before the July 11, 2008, deadline when his motion for leave to amend would have been evaluated only under Rule 15(a)'s liberal standard. Accordingly, the court concludes that Sekil has established good cause for failing to timely submit his motion for leave to amend, and will now consider whether it should be granted pursuant to Rule 15(a).

**C. Rule 15(a) Inquiry**

Since Sekil had sufficient reason for his delay in seeking to amend his complaint, the court does not consider the delay to be undue. There is no indication that Sekil has acted in bad faith by seeking to amend his complaint, and Sekil has not previously attempted to amend his complaint to cure deficiencies. Moreover, the court has already determined that allowing the proposed amendment will not result in undue prejudice to ADT. Therefore, unless allowing Sekil's First Amended Complaint would be futile, the court should grant Sekil's motion.

    1. Futility Standard

Allowing a party to amended his complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." Stripling, 234 F.3d at 873. The court should

10

evaluate Sekil's proposed First Amended Complaint under "'the same standard of legal sufficiency as applies under Rule 12(b)(6).'" Id. (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

When conducting a Rule 12(b)(6) analysis the court must accept all of the plaintiff's allegations in the complaint as true and view them in the light most favorable to the plaintiff. In re S. Scrap Material Co, LLC, 541 F.3d 584, 587 (5th Cir. 2008). All reasonable inferences should be drawn in the plaintiff's favor. Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 371 (5th Cir. 2008). Viewing the complaint in this manner, the court must ultimately determine whether "'the complaint states any valid claim for relief.'" Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 601 (1st ed. 1969)). Mere conclusory allegations, however, are not sufficient. Id. At a minimum, the plaintiff must have plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id.

   2. Analysis

In Sekil's First Amended Complaint he alleges a right to recovery based on several violations of the Texas DTPA.[25] ADT

---

[25]See First Amended Complaint, Docket Entry No. 25 at ¶¶ 14-16.

11

contends, however, that Sekil's allegations amount only to a breach of contract, not a violation of the DTPA.[26]  As the Texas Supreme Court has made clear, "'[a]n allegation of a mere breach of contract, without more, does not constitute a . . . violation of the DTPA.'"  Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14 (Tex. 1996) (quoting Ashford Dev., Inc. v. USLife Real Estate Servs., 661 S.W.2d 933, 935 (Tex. 1983)).  The court must therefore determine whether Sekil's factual allegations amount to a mere breach of contract, or instead constitute at least one "false, misleading, or deceptive act" that violates the DTPA and entitles him to relief thereunder.  See id.

 The DTPA includes a "laundry list" of acts or practices that are considered false, misleading, or deceptive.  See Tex. Bus. & Com. Code Ann. § 17.46(b) (Vernon Supp. 2008).  A person who engages in any of the listed acts or practices may be liable to a "consumer" under the DTPA.  See Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon Supp. 2008).  The false, misleading, or deceptive act or practice, however, must be a producing cause of the consumer's damages, and must be relied on by a consumer to the consumer's detriment.  Id.

---

[26]See Defendant ADT Security Services, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings, Docket Entry No. 16 at 3-6.

Sekil alleges that he contacted ADT, and in response, ADT sent a sales representative to meet with him.[27] During this meeting the ADT sales representative represented to him that an ADT security system could effectively utilize his cell phone as a primary line.[28] Sekil alleges that this representation was false, and that the system installed at his business failed to function because his cell phone was used as the primary line.[29] Because the system failed to function, the burglars who broke into Sekil's store were completely undeterred.[30] Sekil further alleges that after meeting with the sales representative, he executed a contract with ADT, under which ADT agreed to provide security services for Sekil's business in exchange for a monthly fee.[31]

These alleged facts, if proven, would qualify Sekil as a "consumer." A consumer is "an individual . . . who seeks or acquires by purchase or lease, any goods or services . . . ." Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon Supp. 2008). Sekil sought to acquire security system goods and monitoring services through purchase.

---

[27]First Amended Complaint, Docket Entry No. 25 at ¶ 6.

[28]Id.

[29]Id. at ¶¶ 6, 8, 10.

[30]Id. at ¶¶ 9-10.

[31]Id. at ¶ 5.

The facts alleged, if true, also amount to a laundry list violation.  Laundry list provision 17.46(b)(5) provides that "representing that goods or services have . . . characteristics, . . . uses, [or] benefits . . . which they do not have" is a false, misleading, or deceptive act or practice.  Tex. Bus. & Com. Code Ann. § 17.46(b)(5).  Additionally, § 17.46(b)(7) defines the act of "representing that goods or services are of a particular standard, quality, or grade . . . if they are of another" as a false misleading, or deceptive act or practice.  Tex. Bus. & Com. Code Ann. § 17.46(b)(7).  The facts alleged by Sekil fit these definitions.  If ADT represented that its security system would work properly utilizing a cell phone as a primary line, and this representation was not true, ADT represented that a good or service had characteristics, uses, or benefits that it did not have.  See Tex. Bus. & Com. Code Ann. § 17.46(b)(5).  Moreover, the same representation would amount to a representation that goods or services were of a particular standard or quality when they were actually of another.  See Tex. Bus. & Com. Code Ann. § 17.46(b)(7).

From the facts alleged by Sekil a fact finder could reasonably infer that Sekil relied on ADT's representation that the system would work utilizing his cell phone as the primary line in deciding to enter into the contract with ADT and/or in deciding not to obtain a land line for his business.  See Elsensohn, 530 F.3d at 371-72 (explaining that the court is to "draw all reasonable inferences in the plaintiff's favor").  The reliance alleged by

Sekil ultimately proved detrimental. Moreover, the alleged facts are sufficient to support the reasonable inference that ADT's false, misleading, or deceptive representation was a producing cause of Sekil's damages. See Ibarra v. Nat'l Constr. Rentals, Inc., 199 S.W.3d 32, 35 (Tex. App.--San Antonio 2006, no pet.) ("A producing cause is an efficient, exciting, or contributing cause that in the natural sequence of events produces injuries or damages.").

The facts alleged by Sekil with regard to the representation that the security system would function adequately utilizing a cell phone as a primary line, if true, amount to more than a breach of contract. Sekil is not alleging that ADT promised it would install and monitor the security system as required under the contract and then failed to do so. Instead, he bases his claim on a specific, allegedly false representation made by the sales representative regarding the functionality of the system when using a cell phone as the primary line. Thus, Sekil's claim "exists independently of [ADT's] duties under the contract." Conquest Drilling Fluids, Inc. v. Tri-Flo Int'l, Inc., 137 S.W.3d 299, 309 (Tex. App.--Beaumont 2004, no pet.).

Because Sekil's First Amended Petition adequately states at least one claim upon which relief can be granted allowing him to amend his complaint would not be futile. See Stripling, 234 F.3d at 873. Accordingly, the court will grant Sekil's motion for leave to amend his complaint.

15

### III. ADT's Motion for Judgment on the Pleadings

Motions for judgment on the pleadings are governed by Rule 12(c), which provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004).

The court has already subjected Sekil's First Amended Complaint to a Rule 12(b)(6) analysis and concluded that it states a claim upon which relief can be granted.[32] Accordingly, the court will deny ADT's Motion for Judgment on the Pleadings.

### IV. Conclusion and Order

Based on the foregoing, Sekil's Motion for Leave to File First Amended Complaint (Docket Entry No. 24) is **GRANTED**, and ADT's Motion for Judgment on the Pleadings (Docket Entry No. 15) is **DENIED**.

Counsel will appear for a scheduling conference on November 7, 2008, at 2:00 PM in Courtroom 9B.

**SIGNED** at Houston, Texas, on this 3rd day of November, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[32] See supra Part II.C.2.